**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 10-61781-CIV-LENARD/O'SULLIVAN

**BEVERLY MEYER, Individually and on Behalf of All Others Similarly Situated,**

Plaintiff,

v.

**COLAVITA USA INC., and COLAVITA USA, L.L.C.,**

Defendants.
_________________________________/

CASE NO. 10-61793-CIV-LENARD/O'SULLIVAN

**JOSEPH NACHIO, Individually and on Behalf of All Others Similarly Situated,**

Plaintiff,

v.

**AMERICAN RICE INC., POMPEIAN INC., and SALOV NORTH AMERICA CORPORATION,**

Defendants.
_________________________________/

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS COMPLAINT**

**THIS CAUSE** is before the Court on Defendants' motions to dismiss the respective complaints in the nearly identical consolidated actions before the Court: Meyer v. Colavita USA, LLC, Case No. 10-61781 (the "Meyer Lawsuit") and Nachio v. American Rice Inc.,

et al., Case No. 10-61793 (the "Nachio Lawsuit"). On November 23, 2010, Defendant Colavita USA, LLC ("Colavita"),[1] filed its Motion to Dismiss Complaint or Alternatively Strike Allegations ("Colavita's Motion," D.E. 14).[2] Also on November 23, 2010, Defendant American Rice Inc. ("American Rice"), filed its Motion to Dismiss or Alternatively Dismiss Allegations ("American Rice's Motion," D.E. 22), Defendant Pompeian Inc. ("Pompeian"), filed its Joinder in American Rice's Motion and Alternatively Motion to Strike Allegations ("Pompeian's Motion," D.E. 21), and Defendant Salov North America Corporation ("Salov"), filed its Motion to Dismiss ("Salov's Motion," D.E. 20).[3] Having considered the various motions to dismiss, related pleadings, and the record, the Court finds as follows.

## I. Background[4]

On August 13, 2010, Plaintiff Joseph Nachio ("Nachio") filed his Class Action Complaint ("Nachio Complaint," D.E. 1-1 in Case No. 10-61793), in state court against

---

[1] On November 8, 2010, Defendant Colavita USA, Inc. was dismissed pursuant to Plaintiff's stipulation. (See D.E. 12, 13 in Case No. 10-61781.)

[2] On January 5, 2011, Plaintiff Meyer filed her response in opposition to Colavita's Motion, to which Colavita filed its reply on January 21, 2011. (See D.E. 24, 25 in Case No. 10-61781.) Colavita also filed its Request for Judicial Notice and its Request for Oral Argument on January 21, 2011. (See D.E. 26, 27 in Case No. 10-61781.)

[3] On January 5, 2011, Plaintiff Nachio filed its omnibus response in opposition to Defendants American Rice's, Pompeian's, and Salov's motions to dismiss, to which Defendants filed their replies on January 21, 2011. (See D.E. 42, 43, 44 in Case No. 10-61793.) Defendants also filed their Request for Judicial Notice and Request for Oral Argument on January 21, 2011. (See D.E. 45, 46 in Case No. 10-61793.)

[4] The following facts are as set forth in Plaintiffs' complaints and are assumed true for purposes of Defendants' motions.

Defendants American Rice, Pompeian, and Salov. On August 27, 2010, Plaintiff Beverly Meyer ("Meyer"), filed a nearly identical Class Action Complaint ("Meyer Complaint," D.E. 1-2 in Case No. 10-61781), in state court against Defendant Colavita. Both actions were removed to federal court towards the latter part of September 2010.

Defendants market, distribute, and sell "extra virgin" olive oil in the United States. American Rice markets and sells its brand of Bertolli extra virgin olive oil. Pompeian markets and sells its own brand, as does Colavita. Salov markets and sells its brand of Filippo Berio olive oil. Plaintiffs are individual consumers located in Florida who purchased extra virgin olive oil from at least one of the Defendants. Both complaints allege violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et seq. (Count I) and breach of express warranty (Count II), in connection with the marketing and sale of "fake" extra virgin olive oil to consumers.

In essence, Plaintiffs claim Defendants market and sell their extra virgin olive oil for a premium although the products do not meet certain standards. Based upon a study conducted by the University of California at Davis in July 2010 (the "UC Davis Study"), Plaintiffs allege that Defendants' products do not meet certain extra virgin olive oil standards promulgated by the International Olive Council ("IOC"), the United States Department of Agriculture ("USDA"), and the State of California. (See Nachio Complaint at ¶¶ 6-7; Meyer Complaint at ¶¶ 6-7.) According to the complaints, the IOC defines extra virgin olive oil as "virgin olive oil which has a free acidity, expressed as oleic acid, of not more than 0.8 grams

per 100 grams," and meets other characteristics including those evaluated in a "sensory" or "organoleptic" test. (See Nachio Complaint at ¶ 30; Meyer Complaint at ¶ 29.) According to Plaintiffs, the USDA has incorporated many of the IOC regulations into an updated set of voluntary standards. (See Nachio Complaint at ¶ 31; Meyer Complaint at ¶ 30.) Additionally, the State of California defines extra virgin olive oil as:

> Extra virgin olive oil means virgin olive oil which has a free acidity, expressed as oleic acide, of not more than 0.8 grams per 100 grams oil, has a peroxide value of not more than 20 milliequivalent peroxide oxygen per kilogram oil and would meet the sensory standards of extra virgin olive oil as determined by a taste panel certified by the International Olive Council, or, if the International Olive Council ceases to certify taste panels, would meet the sensory standards of a taste panel that is operated by the University of California or California State University according to the guidelines adopted by the International Olive Council as of 2007.

(See Nachio Complaint at ¶ 33; Meyer Complaint at ¶ 32.)

According to the results of the UC Davis Study, some of Defendants' products that were tested failed an "organoleptic" or "sensory" test. (See Nachio Complaint at ¶¶ 6-7; Meyer Complaint at ¶¶ 6-7.) "Upon information and belief," Plaintiffs allege these same products were sold to consumers throughout Florida. (See Nachio Complaint at ¶ 8; Meyer Complaint at ¶ 8.) Plaintiffs believe Defendants intentionally market and distribute inferior olive oil in the United States as extra virgin olive oil because of the premium they can charge and because of a belief that American consumers cannot distinguish a difference between extra virgin olive oil and lower grades of olive oil. (Id.) They attempt to further bolster their allegations by citing to anecdotes of adulterated or counterfeit olive oil being sold in other

countries. (See Nachio Complaint at ¶¶ 56-61; Meyer Complaint at ¶¶ 49-54.)

As a result, Plaintiffs allege Defendants have engaged in false and deceptive trade practices, for which they seek to recover the benefit of their bargain on behalf of two classes of consumers. Nachio seeks injunctive relief and actual damages on behalf of "[a]ll persons who purchased either Bertolli, Filippo Berio, or Pompeian brand products labeled as 'extra virgin' olive oil in the State of Florida." (Nachio Complaint at ¶ 16.) In support, he avers that he "was exposed to and saw Defendants' advertising claims," purchased Bertolli, Pompeian, and Filippo Berio extra virgin olive oil and lost money because of the inferior product he received. (Id. at ¶ 12.) Meyer seeks injunctive relief and actual damages on behalf of "[a]ll persons who purchases Colavita Brand product labeled as 'extra virgin' olive oil in the State of Florida." (Meyer Complaint at ¶ 15.) Meyer also claims she "was exposed to and saw Colavita's advertising claims," purchased Colavita extra virgin olive oil and lost money because of the inferior product she received. (Id. at ¶ 12.)

On November 23, 2010, all Defendants moved to dismiss the Complaint or alternatively strike Plaintiffs' class action allegations and those relating to conduct by third parties.

## II. Motions to Dismiss

All of the Defendants seek dismissal of Plaintiffs' claims under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Among the common challenges to Plaintiffs' allegations are that they are premised entirely upon a flawed UC Davis Study.

Defendants argue the UC Davis Study has been discredited because of its small sample size and is limited in any event because it only involved a small number of olive oil samples in California.[5] Defendants believe there is no basis from which to extrapolate any failure in California to bottles of olive oil purchased in Florida. Moreover, Defendants contend that Nachio and Meyer fail to allege that the olive oil they purchased was not actually extra virgin olive oil, that it tasted bad, that the olive oil in Florida came from the same lots, or that the olive oil they purchased is identical to that distributed and tested in California. Defendants raise that Plaintiffs do not even allege where and when they purchased their olive oil. With regard to Plaintiffs' FDUTPA claim, Defendants believe the allegations must be plead with particularity under Rule 9(b) and Plaintiffs have failed to do so. Defendants also challenge Plaintiffs' FDUTPA claims on the grounds that they have not alleged any causation or facts demonstrating that they or any putative class members purchased extra virgin olive oil because they believed it met certain standards. Defendants believe such factors as price, reputation, retailer selection, availability of coupons, or the size and aesthetics of a bottle all could have affected an individual consumer's decision to purchase any given extra virgin olive oil. Defendants also raise that Plaintiffs have not alleged any harm. With regard to Plaintiffs' breach of express warranty claim, Defendants argue that Plaintiffs have failed to comply with the requirement under Fla. Stat. § 672.607(3)(a) that a plaintiff provide the

[5] Defendants cite to a report issued by the IOC's Chemistry Expert Group concluding that the UC Davis Study's sample size was not statistically significant, samples were misclassified, and standardized IOC procedures were not applied properly.

seller with notice of the breach within a reasonable time after discovery. Finally, Defendants argue the Court should strike the class action allegations as the proposed class is overbroad and individual issues would predominate over common ones, such as whether individual plaintiffs provided adequate notice. Defendants also move to dismiss or strike those allegations pertaining to fraudulent or counterfeit olive oil sold by third parties. Defendants individually argue the allegations fail based on the results of testing of their products as part of the UC Davis Study.

Colavita argues that only two of the three samples of its product were tested in accordance with the study's stated methodology. Of those two samples, one met all standards for extra virgin olive oil while the other met every single chemical and physical IOC standard, but failed a subjective sensory or "taste test" by an Australian panel. (Colavita's Motion at 2.) Colavita believes the limited results of the UC Davis Study fail to support any reasonable inference that the olive oil Meyer purchased was "fake" or in any way deficient.

American Rice argues that every bottle of Bertolli extra virgin olive oil tested as part of the UC Davis Study qualified as extra virgin olive oil according to the objective IOC-sanctioned chemical testing criteria. American Rice argues that the UC Davis Study only identified Bertolli olive oil as falling short on subjective IOC sensory tests and occasionally the non-IOC recognized criteria adopted by the Australian Olive Association ("AOA").

Pompeian contends that the UC Davis Study revealed only that one sample of

Pompeian's extra virgin olive oil met all IOC objective standards, while two other samples met five out of six such criteria. (Pompeian Motion at 2.) Like American Rice, Pompeian argues that its samples only fell short on the subjective IOC sensory test and occasionally the AOA criteria. Pompeian argues the sensory tests are wholly subjective and the application of criteria by an Australian trade group is irrelevant.

Salov argues that the tasting standards relied upon by Plaintiffs are not binding standards under either federal or Florida law. According to Salov, Florida's Legislature has not adopted a standard for distinguishing between extra virgin olive oil and virgin olive oil, but rather, has followed the lead of the federal Food and Drug Administration ("FDA"). The FDA, in turn, has adopted several voluntary grade standards, measured by six objective chemical criteria endorsed by the IOC and subjective sensory tests evaluating oil for "excellent flavor and odor," "defects" and sufficient "fruitiness." (Salov Motion at 4-5.) According to Salov, the USDA standards also allow for some variability in the results from subjective sensory tests. (Id. at 5.) Thus, federal standards are completely voluntary and in fact allow for some variation in subjective testing. With respect to the UC Davis Study's findings, Salov contends that every Filippo Berio sample tested passed every objective test including the USDA's voluntary standards, the IOC standards, California's standards, and even the AOA standards. Of the three samples, one Filippo Berio sample was classified by Australian taste testers as extra virgin olive oil, while the other two were deemed to have sensory qualities akin to virgin olive oil. (Id. at 6.) Like the other Defendants, Salov

contends these inconclusive test results, including only occasional failure of subjective testing, do not provide a basis for inferring that all extra virgin olive oil sold in Florida was fake or deficient in any way.

In response, Plaintiffs contend their allegations are simple. Namely, they allege that Defendants falsely label, market, and advertise their olive oil as meeting the extra virgin olive oil grade, even though they are aware their products do not justify the label. Specifically, Plaintiffs allege that Defendants' products consist of "fake" extra virgin olive oil. With regard to many of Defendants' arguments, Plaintiffs contend they raise issues of fact ripe for consideration only upon a motion for summary judgment but not at this pleading stage. For example, Plaintiffs believe that all bottles of Filippo Berio extra virgin olive oil, from any lot, sold in Florida would fail the extra virgin olive oil grade. (D.E. 42 at 11.) Plaintiffs urge that only discovery will "vet" these issues of fact. (Id.) In support of their FDUTPA claims, Plaintiffs assert that they actually purchased Defendants' products in reliance upon their false advertising, but in any event they were "aggrieved" parties within the scope of Fla. Stat. § 501.211(1). Their "actual injury" was the purchase of a product with insufficient value. Plaintiffs also do not believe they need to plead their FDUTPA claims with particularity under Rule 9(b) as they do not raise any common law fraud claims. In any event, they feel their allegations are plead with particularity. Plaintiffs also believe that any attacks on the validity of the UC Davis Study or "organoleptic" testing can only be resolved after discovery has occurred and a factual record has been developed. Similarly, Plaintiffs

believe that any decision on class certification would be premature given the lack of discovery or motion practice. Finally, Plaintiffs argue they provided notice of breach of a breach to Defendants as evidenced by their letters sent to Defendants on August 30, 2010, with a copy of the respective complaint in this matter. (See D.E. 1-2, 1-3, 1-4 in Case No. 10-61793; D.E. 1-1 at 6-7 in Case No. 10-61781.)

In reply, Defendants argue that even assuming the validity of the UC Davis Study, the allegations contained in the complaints do not support the foundation for a lawsuit alleging all extra virgin olive oil purchased in Florida is actually lower grade oil. As noted by Salov, Nachio does not allege that any bottle of Filippo Berio olive oil he acquired was not "extra virgin" as confirmed by defects discovered through testing. Defendants strongly object that Plaintiffs' allegations are conclusory and insufficient to unlock the doors to discovery. Moreover, Defendants argue that Florida law, like federal law, only requires that extra virgin olive oil be superior to virgin olive oil and the UC Davis Study demonstrated Defendants met this standard. Salov also reiterates that it is protected under FDUTPA's "safe harbor" which specifically exempts practices or acts required or permitted by federal law from liability under FDUTPA. See Fla. Stat. § 501.212; Brett v. Toyota Motor Sales, U.S.A., Inc., 2008 WL 4329876 at *7 (M.D. Fla. Sept. 15, 2008). Finally, Defendants contend that the requirement of providing notice for breach of warranty claims is intended to encourage pre-suit settlement negotiations. Thus, Plaintiff's post-suit attempts to provide notice are inadequate. As such, Defendants seek dismissal of the respective lawsuits.

**III. Standard of Review**

The Federal Rules of Civil Procedure generally require a plaintiff to set forth a "short and plain statement of his claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2)). Hence, while a complaint subject to a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, the complaint must provide the grounds for the plaintiff's "entitlement to relief"; labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Id. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. (citations omitted). Nevertheless, "'unwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009)). In evaluating a motion to dismiss, courts adopt a "two-pronged approach" whereby they first (1) eliminate any allegations in the complaint that are merely legal conclusions and then (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (citing Iqbal, 129 S.Ct. at 1950).

## IV. Discussion

### A. FDUTPA

The FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "To state a claim for Deceptive and Unfair Trade Practices under Florida law, a party must plead (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages or aggrievement." Third Party Verification, Inc. v. Signaturelink, Inc., 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007) (citing Grillasca v. Amerada Hess Corp., 2006 WL 3313719 at *4 (M.D. Fla. 2006)); see e.g., Kia Motors Am. Corp. v. Butler, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008).

Courts are divided as to whether a plaintiff alleging a FDUTPA violation sounding in fraud must meet the pleading requirements of Rule 9(b).[6] Compare Costa v. Kerzner Int'l Resorts, Inc., 2011 U.S. Dist. LEXIS 66921 at *7 (S.D. Fla. June 23, 2011) ("This Court therefore concludes that a FDUTPA plaintiff need not meet the Rule 9(b) pleading standard for fraud claims"); Florida v. Tenet Healthcare Corp., 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (finding the plaintiff's failure to plead its FDUTPA claim (not premised on allegations of fraud) with particularity under Rule 9(b) was not fatal to its claim); Office of the AG, Dep't of Legal Affairs v. Wyndham Int'l, 869 So. 2d 592, 598 (Fla. 1st DCA 2004) ("A

---

[6] Rule 9(b) requires fraud to be plead "with particularity," but provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); Davis v. Powertel, Inc., 776 So. 2d 971, 974 (Fla. 1st DCA 2000) ("The plaintiff need not prove the elements of fraud to sustain an action under [FDUTPA]") with, Llado-Carreno v. Guidant Corp., 2011 U.S. Dist. LEXIS 17088 at *14-15 (S.D. Fla. Feb. 22, 2011) ("The particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law.");D.H.G. Props., LLC v. Ginn Cos., LLC, 2010 U.S. Dist. LEXIS 140208 at *23 (M.D. Fla. Sept. 28, 2010) (finding plaintiff's FDUTPA claim sounded in fraud and thus was governed by Rule 9(b)'s pleading requirements); Zlotnick v. Premier Sales Group, Inc., 431 F. Supp. 2d 1290, 1295 (S.D. Fla. 2006) (plaintiff required to plead FDUTPA claim with particularity under Rule 9(b)); Stires v. Carnival Corp., 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) ("Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b)"). Because the Court finds Plaintiffs' allegations fail to state a FDUTPA claim under the more relaxed pleading standards of Rule 8(a), the court need not consider the more stringent requirements of Rule 9(b).

Plaintiffs fail to plead anything other than unwarranted deductions of fact in support of their claims that Defendants have engaged in a deceptive act or unfair practice. Plaintiffs

do not allege facts suggesting that the olive oil they purchased was not actually extra virgin olive oil. They do not plead facts indicating when, where, and what type of olive oil they purchased and whether the actual olive oil they purchased conformed with the identified standards. Rather, Plaintiffs support their claims with speculation and unwarranted extrapolation from the UC Davis Study's findings. Nevertheless, that study involved a very limited sampling of extra virgin olive purchased from three different cities in California. The sample sizes tested from each Defendant were very small. The results were also somewhat inconclusive. For example, some of Defendants' samples passed both the objective criteria and more subjective organoleptic criteria as meeting the standards for extra virgin olive oil. Others did not, but based upon failures of the more subjective test. Defendants indicate that the IOC, which promulgates the seemingly most pertinent industry standards, has criticized the UC Davis Study as failing to include a statistically significant sample size and not conforming to its standardized sensory testing procedures. Nevertheless, even setting aside the flaws with the UC Davis Study, and assuming their results as true, the study paints a very incomplete picture from which one could at best infer that a portion of Defendants' extra virgin olive oil products, distributed and sold in certain locations in California, do not meet all of the standards promulgated by the IOC for extra virgin olive oil. This does little to support an inference that consumers purchasing Defendants' extra virgin olive oil in Florida have been wronged or sold "fake" olive oil. Plaintiffs make numerous conclusory allegations and assumptions based upon the UC Davis Study but without alleging any facts presenting

a nexus or connection to Florida. There are no allegations that anyone in Florida purchased extra virgin olive that tasted bad, or was tested and failed to meet certain standards, or was in any other way "fake."

As such, the Court finds Plaintiffs have failed to allege facts demonstrating any deceptive acts or unfair trade practices occurring in Florida. Those cases cited by Plaintiffs where courts found plaintiffs had sufficiently alleged a FDUTPA violation involved factual allegations allowing an inference that the products the plaintiffs actually purchased were in some fashion inferior as to what was promised. See Smith WM. Wrigley Jr. Co., 663 F. Supp. 2d 1336, 1340 (S.D. Fla. 2009). This case does not involve similar allegations. Nor do Plaintiffs set forth any facts demonstrating how they have been aggrieved or what damages they suffered. For example, Plaintiffs do not plead facts demonstrating that they paid "X" dollars for what they thought was extra virgin olive oil that in fact turned out to be simply virgin olive oil worth "Y" dollars. Rather, Plaintiffs base their lawsuits on unwarranted deductions of fact and conclusory allegations in the hope that discovery will in fact validate the foundation for their claims. As such, Plaintiffs FDUTPA claims must be dismissed for failure to state a claim.

**B. Breach of Express Warranty**

Under Florida law, "[t]o prove a claim for breach of express warranty, a plaintiff must show that an express warranty was created, that the plaintiff relied on that warranty, and that the defendant breached the warranty causing injury." Jeld-Wen, Inc. v. Nebula Glass Int'l,

Inc., 2007 U.S. Dist. LEXIS 97196 at *43 (S.D. Fla. 2007) (citing Weimar v. Yacht Club Point Estates, Inc., 223 So. 2d 100, 104 (Fla. 4th DCA 1969)); see also Kia Motors, 985 So.2d at 1140-41 (citing McCraney v. Ford Motor Co., 282 So.2d 878, 878 (Fla. 1st DCA 1973)). "Pursuant to Florida's Uniform Commercial Code, '[t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'" Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc., 2010 U.S. Dist. LEXIS 28865 at *14 (M.D. Fla. Mar. 25, 2010) (citing Fla. Stat. § 672.607(3)(a); Dunham-Bush, Inc. v. Thermo-Air Serv., Inc., 351 So. 2d 351, 353 (Fla. 4th DCA 1977)); see also Cohen v. Implant Innovations, Inc., 259 F.R.D. 617, 642 (S.D. Fla. 2008); Hapag-Lloyd, A.G. v. Marine Indem. Ins. Co., 576 So. 2d 1330, 1330-31 (Fla. 3d DCA 1991).

Plaintiffs generally allege in their complaints that all conditions precedent, "including notice," have been performed as part of their breach of express warranty claims. (See Nachio Complaint at ¶ 85; Meyer Complaint at ¶ 76.) They also cite to letters sent by Plaintiffs' counsel to Defendants on August 30, 2010. (See D.E. 1-2, 1-3, 1-4 in Case No. 10-61793; D.E. 1-1 at 6-7 in Case No. 10-61781.) These letters reference and attach copies of the complaints. They also state that the complaints and letters themselves serve as adequate notice pursuant to Fla. Stat. § 672.607. The Court disagrees. First, the filing of a lawsuit does not constitute notice of breach for purposes of the statute. Second, the letters were sent after both the Meyer and Nachio complaints had already been filed in state court. As

Defendants note, the comments to the statute indicate Fla. Stat. § 672.607 is designed to encourage pre-suit settlement negotiation. Fla. Stat. § 672.607 cmt. 4 ("The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation"). Third, Plaintiffs do not allege any facts indicating the letters from their attorneys were sent within a reasonable time after discovery of a breach. Finally, even assuming Plaintiffs provided adequate notice, their breach of express warranty claims fail for the same reasons that their FDUTPA claims fail; they do not allege any facts suggesting Defendants breached their warranties as to Plaintiffs or any other consumers in Florida. As such, Plaintiffs' breach of warranty claims must be dismissed for failure to state a claim.

Accordingly it is hereby **ORDERED AND ADJUDGED** that:

**1.** Defendants Colavita USA, LLC's Motion to Dismiss Complaint, or Alternatively Strike Allegations (D.E. 14 in Case No. 10-61781), American Rice Inc.'s Motion to Dismiss Complaint, or Alternatively Dismiss Allegations (D.E. 22 in Case No. 10-61793), Pompeian Inc.'s Joinder and Motion to Strike Certain Allegations (D.E. 21 in Case No. 10-61793), and Salov North America Corporation's Motion to Dismiss (D.E. 20 in Case No. 10-61793), are **GRANTED**;

**2.** Plaintiff Beverly Meyer's Complaint in Case No. 10-61781 and Plaintiff Joseph Nachio's Complaint in Case No. 10-61793 are **DISMISSED** pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim;

**3.** All other pending motions in both cases, including Defendants' Requests for Oral Argument (D.E. 27 in Case No. 10-61781; D.E. 46 in Case No. 10-61793) and Defendants' Requests for Judicial Notice (D.E. 26 in Case No. 10-61781; D.E. 45 in Case No. 10-61793), are **DENIED AS MOOT**;

**4.** Both cases are now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of September, 2011.

Joan A. Lenard

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**